OPINION
{¶ 1} In these consolidated appeals, Robert Penn; John R. Hubbard; Marilyn Roth, individually, and as executor of the estate of James H. Roth, deceased; William A. Siegel; Mack Price; Herschel Ward; Robert L. Williams; and Edward Harrison, plaintiffs-appellants, appeal from judgments of the Franklin County Court of Common Pleas, in *Page 4 
which the court, in eight separate judgments, denied appellants' motions to prove a prima facie case under R.C. 2307 and appellants' motion for trial setting.
 {¶ 2} Appellants were employed by the various defendant-appellee companies and were exposed to asbestos during the course of their employment. In 2001 and 2002, the current appellants, along with numerous other appellants, filed separate actions against defendants-appellees, A-Best Products Company; ACANDS, Inc.; Anchor Packing Co.; Beazer East, Inc.; Clark Industrial Insulation; Crown Cork and Seal Company, Inc.; CSR Limited; Flintkote Company; Foseco, Inc.; Foster Wheeler Energy Corp.; General Refractories Company; Harbison Walker Refractories, Inc.; Indresco, Inc.; Insul Company, Inc.; Janos Industrial Insulation; Metropolitan Life Insurance Co.; Minnesota Mining and Manufacturing Company; North American Refractories Company; Oglebay Norton Company; Ohio Valley Insulating Company, Inc.; O.K.I. Supply Company; Owens Illinois Corporation, Inc.; Proko Industries, Inc.; Rapid-American Corp.; Synkoloid Company; Union Boiler Company; Uniroyal Rubber Company; United States Mineral Company; Westinghouse Electric Corporation; R.E. Kramig, Inc.; McGraw Construction Co.; McGraw Kokosing, Inc.; Plibrico Sales Service, Inc.; Frank W. Schaefer, Inc.; International Vermiculite Company; George P. Reintjes Company; International Minerals and Chemical Corp.; Andco, Inc.; International Chemicals Company; Dresser Industries, Inc.; General Electric Company; Plibrico Company; Georgia Pacific Corporation; Uniroyal Holding, Inc.; John Crane, Inc.; A.P. Green Services, Inc.; Bigelow Liptak Company; A.P. Green Industries; Flexitallic Gasket Company; Industrial Holding Co.; Amchem Products, Inc.; Asbestos Claims Management Corporation; Certainteed Corp.; C.E. Thurston Sons, Inc.; Dana Corporation; Maremont *Page 5 
Corp.; National Services Industries, Inc.; Pfizer, Inc.; Shook 
Fletcher Insulation Company; Quigley Co., Inc.; T N Nicolet-Keasbey Mattison; Union Carbide Chemical and Plastics Co.; United States Gypsum Company; Raytech, Inc.; Garlock, Inc.; Kaiser Aluminum Chemical Corporation; A.W. Chesterton; Ferodo America, Inc.; Mobile Oil Corporation; Rutland Fire Clay Company; Wheeler Protective Apparel; Worthington Pump, Inc.; Ingersoll Rand Company; D.B. Riley; New National Gypsum Company; Allied Corporation; Lincoln Electric Co.; Wagner Electric Company; Airco, Inc.; Hobart Brothers Company; Asarco, Inc.; Cleaver Brooks Company; Uniroyal, Inc.; Viacom, Inc.; Combustion Engineering, Inc.; H.B. Fuller Co.; Worthington Corp.; and Kelly-Moore Paint Co., Inc. (collectively "appellees").
 {¶ 3} The appellants in the actions claimed they had been diagnosed with asbestos-related diseases caused by their employment with appellees. Specifically, Hubbard, Siegel, and Price were diagnosed with colon cancer; Roth, Penn, and Harrison were diagnosed with asbestosis; Ward was diagnosed with lung cancer; and Williams was diagnosed with laryngeal cancer. Hubbard, Siegel, Williams, Price, and Ward also alleged claims of asbestosis. On September 2, 2004, H.B. No. 292 became effective. H.B. No. 292, via R.C. 2307.92, retroactively established minimum criteria necessary for asbestos-related claims and required the submission of a prima facie case for those claims at the beginning of the action. Whether R.C. 2307.92 requires a prima facie case to be demonstrated for all asbestos-related claims or merely the types of claims specifically enumerated in the statute is one issue in the present appeal. R.C. 2307.92 requires a prima facie showing specifically for non-malignant conditions under subsection (B); lung cancer in a "smoker" under subsection (C); and wrongful death claims under *Page 6 
subsection (D), but explicitly exempts claims for mesothelioma under subsection (E) from a prima facie showing.
 {¶ 4} Although appellants believed that H.B. No. 292 did not require the submission of a prima facie case for their claims because they were not based upon the types of cancers specifically named in R.C. 2307.92, appellants filed motions to prove a prima facie case and motions to set trial date in June through September 2005.
 {¶ 5} On April 16, 2007, the trial court denied appellants' motions, finding, in general, that those plaintiffs' claims based upon wrongful death, asbestosis, and lung cancer had failed to demonstrate a prima facie case, pursuant to H.B. No. 292, R.C. 2307.92, 2307.93, and2307.94; and those plaintiffs' claims for colon and laryngeal cancers had not accrued because they were not diagnosed by a "competent medical authority" pursuant to R.C. 2305.10. Appellants have appealed the judgments of the trial court. Owens Illinois, Inc. ("Owens"), has filed an appellee's brief with this court. H.B. Fuller Co.; Industrial Holdings Corp.; Union Carbide Corp.; Amchem Products, Inc.; Certainteed Corp.; Foseco, Inc.; and Caborundum Co., Inc. (collectively "Fuller appellees"), have also filed an appellees' brief. Appellants assert the following assignments of error:
 [I.] The trial court erred in finding that H.B. 292, O.R.C. § 2307.92, O.R.C. § 2307.93, and O.R.C. § 2307.94 appl[y] to "other cancer" claims, including colon cancer and laryngeal cancer claims, and required Plaintiffs-Appellants to meet a prima facie case for both colon cancer, laryngeal cancer, and an asbestosis claim.
 [II.] The trial court erred in finding that H.B. 292, O.R.C. § 2307.92, O.R.C. § 2307.93, and O.R.C. § 2307.94 applies to non-smoking lung cancer claims, and requires Plaintiff-Appellant *Page 7 
Herschel C. Ward to meet a prima facie case for both a non-smoking lung cancer claim and asbestosis claim.
 [III.] The trial court erred in finding that H.B. 292, O.R.C. § 2307.92, O.R.C. § 2307.93, and O.R.C. § 2307.94 requires Plaintiffs-Appellants' prima facie case evidence must come from a "competent medical authority."
 [IV.] The trial court erred in finding that a diagnosis by a "competent medical authority" is the only way for an asbestos cause of action to accrue.
 [V.] The trial court erred in failing to administratively dismiss the cases of Plaintiffs-Appellants Hubbard, Siegel, Roth, and Penn without prejudice in the April 16, 2007 DECISIONS AND ENTRIES. The trial court may have failed to administratively dismiss Plaintiffs[']-Appellants['] cases without prejudice through clerical error as the trial court did acknowledge in each DECISION AND ENTRY that these cases should be administratively dismissed without prejudice in the body of its DECISIONS AND ENTRIES in Hubbard, Siegel, Roth and Penn, bud did not carry forth the "administrative dismissal" language in its conclusion.
 {¶ 6} We will address appellants' fourth assignment of error first. Appellants argue in their fourth assignment of error that the trial court erred when it found that a diagnosis by a "competent medical authority" is the only way for an asbestos cause of action to accrue. Appellants argue that, pursuant to R.C. 2305.10, an asbestos cause of action may also accrue on the date that the plaintiff, in the exercise of reasonable diligence, should have known that he or she had an injury that was related to asbestos exposure. R.C. 2305.10(B)(5) provides:
 For purposes of division (A) of this section, a cause of action for bodily injury caused by exposure to asbestos accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the *Page 8 
plaintiff has an injury that is related to the exposure, whichever date occurs first.
 {¶ 7} In the present case, the sole reason cited by the trial court as grounds for denying the motions of Hubbard (colon cancer), Siegel (colon cancer), Price (colon cancer), and Williams (laryngeal cancer) was that their actions for injuries based upon these "other cancers" could not accrue until they had been informed by competent medical authority that their injuries were related to asbestos exposure. Thus, the trial court reasoned, because the evidence put forth by these plaintiffs was not from competent medical authorities, their claims had to be administratively dismissed.
 {¶ 8} However, appellants contend that R.C. 2305.10(B)(5) contains two mechanisms for accrual of asbestos-related claims: (1) "the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure"; "or" (2) "the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first." Appellants claim the trial court only addressed the first accrual method but did not address the second accrual method. Appellants argue that the only reasonable, logical reading of R.C. 2305.10(B)(5) is that the use of the disjunctive "or" indicates that either of the two separate events, operating at different times, may cause an asbestos-related claim to accrue. Therefore, appellants conclude that, at a minimum, when their respective doctors issued their opinions concerning their conditions, their claims accrued, regardless of whether those doctors constituted "competent medical authority," because it was at that time that they "should have known" that they had injuries related to asbestos exposure. *Page 9 
 {¶ 9} As an initial point, we do not find R.C. 2305.10(B)(5) to be ambiguous. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. Ohio Dental Hygienists Assn. v.Ohio State Dental Bd. (1986), 21 Ohio St.3d 21, 23. An unambiguous statute is to be applied, not interpreted. Id. Here, R.C. 2305.10(B)(5) uses the conjunction "or." "Or" is "a function word indicating an alternative between different or unlike things." Pizza v. SunsetFireworks Co., Inc. (1986), 25 Ohio St.3d 1, 4-5. That is, the statute's use of the disjunctive "or" indicates that the two phrases on either side of the term were not intended to have the same meaning and that if the circumstances satisfy either one, then the cause of action has accrued. As this court has pointed out before, it must be presumed that the legislature was aware of the rules of grammar when the statute was promulgated. See State ex rel. Rear Door Bookstore v. Tenth Dist. Courtof Appeals (1992), 63 Ohio St.3d 354, 362 (referring to the promulgation of R.C. 3767.01 in a case in which the Ohio Supreme Court adopted this court's appellate decision in full). By using the word "or," the legislature gave a separate and distinct identity to each of the articulated phrases. See id. We also note that the statutory provision ends with "whichever date occurs first," which offers an additional indication that the date upon which either of the two circumstances occurs may be deemed the date of accrual.
 {¶ 10} We find appellees' arguments to the contrary unconvincing. Appellees contend that the "should have known" clause in R.C.2305.10(B)(5) "reinforces" the "competent medical authority" requirement and does not supplant it. Appellees claim that the "should have known" clause was meant to protect defendants from plaintiffs who might argue a technical failure of the "informed by competent medical authority" *Page 10 
requirement, e.g., if a plaintiff did not learn of the diagnosis from the doctor that made the diagnosis but from a nurse, lawyer, co-worker, or some other person who was not a "competent medical authority." Appellees assert that appellants' reading of the statute could not be correct because no lay plaintiff could determine he/she had been injured by asbestos, and to read so would render the "competent medical authority" language superfluous.
 {¶ 11} We disagree with appellees' contentions. Initially, appellees cite no authority for their assertions. Further, appellees' reading of the statute depends not upon the plain language of the statute, but upon an interpretation of the statute. When the legislature uses unambiguous language, we cannot resort to statutory interpretation to find an ambiguity. The legislature chose to use the word "or" between two phrases without any language to indicate the two phrases should be construed as anything other than independent. We are permitted only to use the rules of common usage and common meanings when an ambiguity is not apparent on the statute's face. Appellees' reading of the statute is also inconsistent with the grammatical construction of the provision. Importantly, the General Assembly did not give any indication in the "should have known" phrase that it meant to limit such language to the narrow circumstances of "should have known based upon competent medical authority."
 {¶ 12} Additionally, as to the merits of appellees' argument, we do not believe reading the two phrases on either side of "or" independently would render the statute illogical or render the "competent medical authority" requirement in the first phrase superfluous. Although it is reasonable to suggest that the "should have known" phrase was designed to protect defendants from plaintiffs who turn a blind eye to evidence that *Page 11 
they have suffered an asbestos-related injury, it in no way must follow that the reason the plaintiff "should have known" must have originated from the diagnosis of a "competent medical authority." It is important to be mindful that R.C. 2305.10(B)(5) was enacted to serve primarily as a statute of limitation and not as a tool to dismiss claims that had not yet accrued, although it may serve this purpose as well. If we view the language in the context of a statute of limitation, then the "should have known" phrase employed by the legislature would serve the purpose of broadening the scope of the accrual date. Appellees' interpretation of the "should have known" phrase would do little to broaden the scope of the accrual date, except in the unusual circumstance appellees point out, i.e., a plaintiff attempting to extend the statute of limitations by claiming to be informed secondhand of a diagnosis by a competent medical authority of an asbestos-related injury, instead of being informed directly by the competent medical authority. In contrast, permitting accrual of an action based upon any circumstances that should have reasonably informed a plaintiff that he/she had suffered an injury more clearly meets the purpose of broadening the scope of the accrual date for statute of limitation purposes.
 {¶ 13} We also do not believe that assigning independent significance to the "should have known" option in R.C. 2305.10(B)(5) would necessarily render the "competent medical authority" alternative superfluous. The Fuller appellees contend that, under our reading of R.C. 2305.10(B)(5), if being informed by an "incompetent medical authority" of the link between an injury and asbestos is sufficient to satisfy the statute's "should have known" language, the "competent medical authority" language would be stripped of all meaning. However, the Fuller appellees' view is too limited. Besides the single scenario in which an "incompetent medical authority" might cause a reasonable *Page 12 
person to know he/she suffered an asbestos injury, there are other circumstances that could cause a person to know they suffered from an asbestos injury. Also, although a doctor who did not otherwise qualify as "competent medical authority" might diagnose a plaintiff as suffering from an asbestos-related injury, there would still exist the issue of whether the opinion of the "incompetent medical authority" was sufficient to make a reasonable person believe he/she had suffered an asbestos-related injury.
 {¶ 14} In addition, R.C. 2305.10(B)(1), (2), (3), and (4), which relate to bodily injury caused by exposure to certain chemicals, substances, and medications, employ the same grammatical structure and language as R.C. 2305.10(B)(5), and, in a case discussing one of those sections, this court has addressed the "should have known" language without any discussion of or requirement for competent medical authority. In Taylor v. Loft Painting Co. (Mar. 1, 2001), Franklin App. No. 00AP-1106, this court addressed the same "should have known" language as is used in R.C. 2305.10(B)(5) in addressing the accrual date of a claim based upon exposure to hazardous chemicals, under R.C.2305.10(B)(1). We found the plaintiff should have reasonably known that her exposure to the hazardous chemicals caused her injury because the plaintiff was aware she had no sense of smell almost immediately after she was exposed to the chemicals, and she knew the loss of sense of smell was not merely related to a cold when her cold ended and the loss of sense of smell persisted. We concluded a reasonable person would have connected the inability to smell with a prior incident in which she fainted from the inhalation of fumes, became disoriented, required oxygen, and then suffered from a cold that persisted for approximately six months. The obvious thing to do, we found, was to follow up in investigating the identity of the strange chemicals that caused her to pass out almost *Page 13 
immediately before she lost her sense of smell. Thus, inTaylor, our "should have known" analysis was based purely on factual circumstances unrelated to any underlying diagnosis by a competent medical authority.
 {¶ 15} For these reasons, we find the trial court erred in denying the motions of Hubbard (colon cancer), Siegel (colon cancer), Price (colon cancer), and Williams (laryngeal cancer) based upon the sole reasoning that their claims could not accrue until they had been informed by competent medical authority that their injuries were related to asbestos exposure. R.C. 2305.10(B)(5) provides that such claims could also accrue on the date on which, by the exercise of reasonable diligence, these appellees should have known that they had an injury that was related to the exposure. As the trial court did not address this issue, we must remand the matter for a determination of such.
 {¶ 16} We also note that, in their fourth assignment of error in their appellate brief, appellants do not raise any argument or error in the trial court's conclusion that
 "competent medical authority," for purposes of R.C. 2305.10(B)(5), is defined by R.C. 2307.91(Z), which was part of H.B. No. 292. However, appellees did discuss this issue in their briefs, and appellants discussed it in their reply brief. Appellants asserted that R.C. 2307.91(Z) in no way amends, informs, modifies, or in any other way affects the term "competent medical authority," as used in R.C. 2305.10(B)(5). Although not specifically raised as error, we agree with appellants' view. R.C. 2307.91(Z) provides: "Competent medical authority" means a medical doctor who is providing a diagnosis for purpose of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code and who meets the following requirements[.] *Page 14 
 {¶ 17} The trial court here found that "competent medical authority," as used in R.C. 2305.10, should be defined by R.C. 2307.91(Z). However, by the plain terms of R.C. 2307.91(Z), the definition of "competent medical authority" is only applicable in the context of a doctor providing a diagnosis for purposes of constituting prima facie evidence of an exposed person's physical impairment pursuant to the requirements of R.C. 2307.92. It makes no mention of supplying the definition of "competent medical authority" for purposes of R.C. 2305.10(B), and appellees can direct us to no statutory authority indicating such. Other appellate courts are in accord. In Nichols v. A.W. Chesterton Co., Butler App. No. CA2006-12-316, 2007-Ohio-3828, the court was faced with the same issue raised by the same counsel for Owens and the Fuller appellees as in the present case and concluded likewise:
 If the General Assembly had intended for the definition of "competent medical authority" to apply to R.C. 2305.10(B)(5) in all asbestos cases, the legislature could have easily said so. Because the General Assembly did not, it is apparent that the definition of "competent medical authority" contained in R.C. 2307.91(Z) applies merely to those medical doctors who provide a diagnosis for purposes of establishing prima facie evidence of an exposed person's physical impairment that meets the requirements of R.C. 2307.92. * * *
(Emphasis sic.)
 {¶ 18} Similarly, in Wagner v. Anchor Packing Co., Lawrence App. No. 05CA47, 2006-Ohio-7097, at ¶ 36, a case involving the same counsel for Owens and the Fuller appellees as in the present case, the appellate court concluded the trial court should not have used the definition of "competent medical authority" in R.C. 2307.91(Z) to determine whether the appellant's cause of action accrued under R.C. 2305.10. The court found *Page 15 
that, by its terms, this definition limits itself to whether the doctor is a competent medical authority for purposes of establishing a prima facie case under R.C. 2307.92.
 {¶ 19} The Fuller appellees further counter that the legislature indicated its intention to apply all definitions promulgated by H.B. No. 292, including that of "competent medical authority" found in R.C.2307.91(Z), to 2305.10(B)(5), when it provided that the new H.B. No. 292 definition in R.C. 2307.92(A) for "bodily injury" should be used to define that term in R.C. 2305.10(B)(5). We disagree. R.C. 2307.92(A) provides:
 For purposes of section 2305.10 and sections 2307.92 to 2307.95 of the Revised Code, "bodily injury caused by exposure to asbestos" means physical impairment of the exposed person, to which the person's exposure to asbestos is a substantial contributing factor.
 {¶ 20} R.C. 2307.92(A) explicitly redefines only "bodily injury" for purposes of R.C. 2305.10, and does not mention the definition of "competent medical authority" or any other definition promulgated by H.B. No. 292. As appellants point out, if the legislature had intended to link the definition of "competent medical authority" in R.C.2307.91(Z) with 2305.10(B)(5), the legislature would have done so, just as it linked the new H.B. No. 292 definition of "bodily injury" with R.C. 2305.10(B)(5). Thus, we find the trial court also erred when it concluded that "competent medical authority," for purposes of R.C.2305.10(B)(5), is defined by R.C. 2307.91(Z). For these reasons, appellants' fourth assignment of error is sustained.
 {¶ 21} We will address appellants' first and second assignments of error together, as they are related. Appellants argue in their first assignment of error that the trial court erred when it found that H.B. No. 292, R.C. 2307.92, 2307.93, and 2307.94 apply to "other cancer" claims, including Hubbard's, Siegel's, and Price's colon cancer claims and *Page 16 
Williams' laryngeal cancer claim, and required appellants to meet a prima facie case for colon cancer and laryngeal cancer. Appellants argue in their second assignment of error that the trial court erred when it found that H.B. No. 292, R.C. 2307.92, 2307.93, and 2307.94 apply to non-smoking lung cancer claims, and required Ward to meet a prima facie case for a non-smoking lung cancer claim. In regard to both assignments of error, appellants claim that, in adopting Am. Sub. H.B. No. 292, the legislature required only three groups of plaintiffs alleging an asbestos claim to make a prima facie showing via a diagnosis of a "competent medical authority" in R.C. 2307.92: (1) those alleging an asbestos claim based on a "nonmalignant condition," pursuant to subsection (B); (2) those alleging an asbestos claim based upon lung cancer in a "person who is a smoker," pursuant to subsection (C); and (3) those alleging an asbestos claim based upon "wrongful death" pursuant to subsection (D). Appellants assert that no provisions create a general requirement for a prima facie showing by all asbestos plaintiffs.
 {¶ 22} With regard to Hubbard's, Siegel's, Price's, and Williams' "other cancer" claims, we can find no place in the trial court's judgments where the trial court found that the "other cancer" claims of these appellants were required to meet a prima facie showing under R.C.2307.92. The trial court stated that, "[although R.C. 2307.92 does not set forth specific criteria for maintaining an asbestos claim for [colon or laryngeal] cancer, the Court finds that HB 292 is still applicable." Thus, the trial court seemingly found that R.C. 2307.92 did not set forth criteria for maintaining a claim for colon or laryngeal cancer. The trial court's reference that "HB 292 is still applicable" seems to regard its immediately subsequent finding that H.B. No. 292, specifically R.C. 2307.91(Z), defines what constitutes "competent medical authority," as that term is used in R.C. 2305.10. Thus, the *Page 17 
trial court did not require that appellants meet a prima facie case for their colon cancer and laryngeal cancer claims. Admittedly, we are somewhat perplexed by appellants' argument on this issue, as they spend considerable time in their appellate brief arguing this point. We simply cannot find where the trial court addressed the issue or relied upon it to determine any of the cases. Adding to our perplexity, the Fuller appellees admit in their appellate brief: "[A]ppellees concede that the statute does not require prima facie evidence in cases other than non-malignancies, lung cancer in a smoker, and wrongful death"; while Owens claims that all cancer claims (except the one cancer claim specifically indicated in R.C. 2307.92[E], mesothelioma) require a prima facie showing. Regardless, because the trial court never made the finding to which appellants seemingly object, appellants' first assignment of error must be overruled.
 {¶ 23} Appellants' second assignment of error with regard to Ward's lung cancer claim requires a slightly different approach. Appellants argue that the trial court erred in analyzing Ward's case as one for a "smoker" with lung cancer under R.C. 2307.92, and requiring Ward to meet a prima facie case for his lung cancer claim. R.C. 2307.92(C)(1) provides, in pertinent part:
 No person shall bring or maintain a tort action alleging an asbestos claim based upon lung cancer of an exposed person who is a smoker, in the absence of a prima-facie showing* * *
Subsection (C) goes on to require the showing of a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition, as well as a prima facie showing of a diagnosis by a competent medical authority that exposure to asbestos is a *Page 18 
substantial contributing factor to that cancer, at least ten years have elapsed from the date of the exposed person's first exposure to asbestos until the date of diagnosis of lung cancer, and either evidence of the exposed person's substantial occupational exposure to asbestos, or evidence of the exposed person's exposure to asbestos at least equal to 25 fiber per cc years.
 {¶ 24} A "smoker" is defined in R.C. 2307.91(DD), which provides:
 "Smoker" means a person who has smoked the equivalent of one-pack year, as specified in the written report of a competent medical authority pursuant to sections 2307.92 and 2307.93 of the Revised Code, during the last fifteen years.
 {¶ 25} Appellants argue that Ward last smoked in 1976; thus, he is not a "smoker," and the trial court erred when it found he was required to establish a prima facie case as a smoker with lung cancer. The Fuller appellees maintain that the trial court properly addressed Ward's claim as a smoker because he failed to submit the proper evidence that he was a non-smoker. The Fuller appellees point to R.C. 2307.91(DD) to assert that evidence of a plaintiff's smoking status must appear "in the written report of a competent medical authority." The Fuller appellees claim that R.C. 2307.93(A)(1) requires a plaintiff to file a written report explaining his smoking history. We disagree with both of the Fuller appellees' contentions.
 {¶ 26} R.C. 2307.91(DD), as written, only directs how one is to be deemed a smoker. To be deemed a smoker, a competent medical authority must specify in a written report that the person has smoked the equivalent of one pack per year during the last 15 years. There is no provision explaining how one must prove he is a non-smoker. It is true that, by implication, a party must have smoked less than one pack per year during the last *Page 19 
15 years to be deemed a non-smoker. Yet there is no requirement in R.C.2307.91(DD) that a non-smoker must submit evidence via a competent medical authority indicating such.
 {¶ 27} In addition, contrary to the Fuller appellees' assertion, R.C.2307.93(A)(1) fails to impose any requirement upon a non-smoker to submit evidence via a competent medical authority to indicate his smoking status. R.C. 2307.93(A)(1) provides:
 The plaintiff in any tort action who alleges an asbestos claim shall file, within thirty days after filing the complaint or other initial pleading, a written report and supporting test results constituting prima-facie evidence of the exposed person's physical impairment that meets the minimum requirements specified in division (B), (C), or (D) of section 2307.92 of the Revised Code, whichever is applicable. * * *
 {¶ 28} The Fuller appellees claim that the language "[t]he plaintiff in any tort action who alleges an asbestos claim shall file * * * a written report and supporting test results" requires a non-smoker to file a report from a competent medical authority indicating his smoking status. However, R.C. 2307.93(A)(1) does not mention such a requirement or so much as imply such. The only type of written report and supporting test results required under this section are those "constituting prima-facie evidence of the exposed person's physical impairment that meets the minimum requirements specified in division (B), (C), or (D) of section 2307.92 of the Revised Code, whichever is applicable." Thus, this provision places no burden upon a party to submit a written report and supporting test results to demonstrate he is a non-smoker.
 {¶ 29} Therefore, the only issue remaining is whether R.C. 2307.92
applies to nonsmoking lung cancer claims and requires Ward to meet a prima facie case for his nonsmoking lung cancer claim. Initially, as indicated above, we note that the Fuller appellees *Page 20 
concede in their appellate brief "[a]ppellants are correct in stating that the statute has no prima facie requirements for these [other] cancers," and "appellees concede that the statute does not require prima facie evidence in cases other than non-malignancies, lung cancer in a smoker, and wrongful death." Thus, as we have found that Ward was a non-smoker, the Fuller appellees would concede that he is not required to prove a prima facie case under R.C. 2307.92.
 {¶ 30} However, it appears that Owens takes the position that, even if not one of the specifically enumerated types of claims under R.C.2307.92, any "other cancer" claims are still subject to a prima facie showing. Initially, as indicated above, we can find no place in the trial court's judgments where the trial court found that "other cancer" claims are required to make a prima facie showing under R.C. 2307.92, and the trial court specifically stated that "R.C. 2307.92 does not set forth specific criteria for maintaining an asbestos claim for [an `other'] cancer[.]"
 {¶ 31} Notwithstanding, Owens' arguments are unpersuasive. To support its contention that the prima facie requirements apply to "other cancer" claims, Owens cites the following phrase from R.C. 2307.93(A)(1): "[t]he plaintiff in any tort action who alleges an asbestos claim shall file * * * a written report and supporting test results constituting prima-facie evidence[.]" However, Owens fails to cite the remainder of the provision, which limits the prima facie evidence that must be submitted to that "of the exposed person's physical impairment that meets the minimum requirements specified in division (B), (C), or (D) of section 2307.92 of the Revised Code, whichever is applicable." Thus, the type of asbestos claim that must file evidence to support a prima facie case is specifically limited to those types of claims fitting within R.C. 2307.92(B) (non-malignant *Page 21 
disease), R.C. 2307.92(C) (lung cancer in a smoker); and R.C. 2307.92(D) (wrongful death claims).
 {¶ 32} A plain reading of R.C. 2307.92 indicates that only those types of cases explicitly specified must demonstrate a prima facie case. A cancer claim of a non-smoker is not one of those types of claims specified, and we can find no requirement anywhere within the H.B. No. 292 statutes that requires such a claimant to demonstrate a prima facie case. Owens' arguments focus primarily on speculative or interpretive legislative intent. However, in interpreting a statute, our attention is directed to the terminology employed, we cannot speculate apart from the words as to the probable intent of the legislature. Wachendorf v.Shaver (1948), 149 Ohio St. 231, paragraph five of the syllabus. Thus, no intent may be imputed to the legislature in the enactment of a law except that supported by the language of the law itself. Cleveland TrustCo. v. Eaton (1970), 21 Ohio St.2d 129. As the legislature here employed no language to require an "other cancer" plaintiff to demonstrate a prima facie case, we cannot infer one.
 {¶ 33} Other appellate courts have concluded likewise. InWagner, supra, the court found that the prima facie requirements of R.C.2307.92 do not apply to "other cancer" claimants — a colon cancer claimant in its case. The court reasoned as follows:
 * * * Nothing in the legislation explicitly applies to a colon cancer claim. Instead, the legislation explicitly requires only three types of plaintiffs to present a prima-facie showing: (1) plaintiffs advancing an asbestos claim based upon a nonmalignant condition; (2) smokers advancing an asbestos claim based upon lung cancer; and (3) plaintiffs alleging an asbestos claim based upon wrongful death. The legislation as originally drafted included a provision that governed plaintiffs asserting other asbestos-related cancers, including colon cancer, * * * but the provision was not included in the final draft. "The canon expressio unius est exclusio alterius tells us *Page 22 
that the express inclusion of one thing implies the exclusion of the other. Black's Law Dictionary (8th Ed.2004) 620." Myers v. Toledo[,] 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176, at ¶ 24.
 While the General Assembly may well have intended all asbestos-related cancer claims to be subject to the new legislation, that intent is not clearly expressed in the statute. As we noted above, the first draft of the legislation included a provision that specifically addressed other types of asbestos-related cancer, including colon cancer. Curiously, the provision was omitted from the final draft as enacted. This may evince an intent not to subject other asbestos-related cancer claims to the new requirements. While we can only speculate as to the legislature's true intention, we apply the literal terms of the statute and conclude that it does not apply to other asbestos-related cancer.
 Accordingly, * * * because H.B. 292 does not contain a provision requiring an asbestos-related colon cancer claim to comply with the prima-facie showing, it does not apply to appellant's colon cancer claim. We therefore remand the case to the trial court so that it can evaluate appellant's cause of action under Ohio common law.
Id., at ¶ 30-32 (Footnote omitted). See, also, Nichols, supra (same defendants as in the present case acknowledged that the requirements in R.C. 2307.92[B], [C], and [D] do not apply to "other cancer" cases).
 {¶ 34} Therefore, we find the trial court erred in addressing Ward's claim under the prima facie standards required by a smoker under R.C.2307.92. Furthermore, as a non-smoker with lung cancer, R.C. 2307.92
imposes no burden upon him to present a prima facie case. Also, as we stated above, although the trial court did not specifically address such, we note this reasoning would obviously apply equally to Hubbard's, Siegel's, Price's, and Williams' "other cancer" claims. Therefore, appellants' first assignment of error is overruled, and their second assignment of error is sustained. *Page 23 
 {¶ 35} Appellants argue in their third assignment of error that the trial court erred when it found that H.B. No. 292, R.C. 2307.92,2307.93, and 2307.94 require that appellants' prima facie case evidence come from a "competent medical authority." Appellants' arguments under this assignment of error are very brief and undeveloped. Insofar as appellants may first be arguing that the new requirements under R.C. 2307 were improperly and unconstitutionally imposed retroactively to their claims, appellants indicated at the trial court level that they were withdrawing any retroactivity claims, as noted by the trial court. Insofar as appellants may also be arguing that they should not have been required to submit evidence based upon "competent medical authority," we addressed this issue under appellants' fourth assignment of error above, and the argument herein is moot. Therefore, we overrule appellants' third assignment of error, while acknowledging one of the arguments might have already been addressed previously.
 {¶ 36} Appellants argue in their fifth assignment of error that, notwithstanding the substantive errors claimed in their assignments of error, the trial court also erred when it failed to indicate that appellants' claims were administratively dismissed pursuant to R.C.2307.93(A)(3)(c). At oral argument, appellants' counsel informed the panel that the trial court had entered orders clarifying the dismissals to indicate that they had been administratively dismissed, and the issue was now moot. As this error is the only one alleged with regard to Harrison, Roth, and Penn, the trial court's corrective entries apply to these appellants. As we have found herein that the trial court's original judgments with regard to the remaining appellants must be reversed, any corrective entries that may *Page 24 
apply to these remaining appellants must be reversed as well. Therefore, appellants' fifth assignment of error is moot.
 {¶ 37} Accordingly, appellants' first and third assignments of error are overruled, appellants' second and fourth assignments of error are sustained, and appellants' fifth assignment of error is moot. The judgments of the Franklin County Court of Common Pleas are affirmed in part and reversed in part, and these matters are remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgments affirmed in part and reversed in part; causes remanded.
 McGRATH and TYACK, JJ., concur. *Page 1